## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

DESIGN-BUILD CONCEPTS, INC.,

        Plaintiff,

v.                             Case No.: 3:06cv558/MCR/MD

JENKINS BRICK COMPANY, and
CONTINENTAL CAST STONE
MANUFACTURING, INC.,

        Defendants.

_____

JENKINS BRICK COMPANY,

        Crossclaim Plaintiff,

v.

CONTINENTAL CAST STONE
MANUFACTURING, INC.,

        Crossclaim Defendant.

_____/

## O R D E R

      This action arises out of a dispute concerning the quality and timeliness of cast stone pieces manufactured by the Defendant/Crossclaim Defendant Continental Cast Stone Manufacturing, Inc. ("Continental") for use in the construction of a bank in Crestview, Florida.  Pending before the court are Continental's Motions to Dismiss Counts Six through Ten of Plaintiff Design-Build Concepts, Inc.'s ("Design-Build") Amended Complaint and Defendant/Crossclaim Plaintiff Jenkins Brick Company's ("Jenkins") Crossclaim for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Docs. 54 and

57).[1]  The court has reviewed the record, including the affidavits and evidence filed by the parties, as well as the applicable law.  For the reasons that follow, Continental's motions to dismiss will be DENIED.

**Background**[2]

Design-Build is a Georgia corporation with its principal place of business in Georgia.[3]  Design-Build is authorized to and does conduct business in Florida.  Design-Build is in the business of design-build construction.  Jenkins is an Alabama corporation with its principal place of business in Alabama.[4]  Jenkins is authorized to and does conduct business in Florida.  Jenkins manufactures brick and other masonry construction products.  Continental is a Kansas corporation with its principal place of business in Shawnee, Kansas.  Continental manufactures and distributes cast stone products.  Continental is not registered to do business in Florida.

Design-Build entered into a construction contract with the First National Bank of Crestview, Florida ("Bank") on or about December 16, 2002, for the design and construction of a new office building in Crestview, Okaloosa County, Florida ("the Crestview project" or "the project").  The design developed by Design-Build for this project included the use of cast stone block in various parts of the bank.  On or about May 25, 2004, Design-Build and Jenkins entered into a purchase order contract in which Jenkins agreed to supply masonry materials for the project, including all of the pieces of cast stone block

---

[1]  In its Amended Complaint, Design-Build brings claims against Jenkins for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and negligent misrepresentation (Counts One through Five). (Doc. 51). It also brings claims against Continental for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, and as a third-party beneficiary for breach of contract (Counts Six through Ten).  Id.  In response to Design-Build's Amended Complaint, Jenkins filed a Crossclaim against Continental for contribution, indemnity, breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.  (Doc. 52).

[2]  The factual background is taken from Design-Build's Amended Complaint and Jenkins' Crossclaim to the extent the facts are not contradicted by Continental's jurisdictional affidavit filed in support of its pending motions to dismiss.

[3]  The record does not indicate the city in Georgia where Design-Build's principal office is located.

[4]  The record does not indicate the city in Alabama where Jenkins' principal office is located.

("the cast stone pieces").  This contract set forth specifications for the various cast stone pieces and required that deliveries of the cast stone to the project start no later than August 9, 2004.  Jenkins then entered into a separate contract with Continental for the manufacture and delivery of all the cast stone pieces needed for the project.  The cast stone was to conform to the specifications, standards, and scheduling requirements set forth in the contract between Design-Build and Jenkins.

Design-Build alleges that Jenkins and Continental failed to deliver the cast stone pieces within the time frames required by Design-Build's contract with Jenkins.  According to Design-Build, the first cast stone was not delivered until October 2004 and delivery of all pieces was not complete until November 2005.  Design-Build also alleges that Continental failed to supply the cast stone pieces in the sequence required to support construction.  Finally, Design-Build alleges that the cast stone pieces that were delivered had manufacturing defects including improper sizing and dimensions, chips and cracks, and improper anchorages.

**Legal Standards**

A federal district court sitting in diversity "may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution."  Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).  Thus, in deciding whether it may exercise jurisdiction over a nonresident defendant, a federal district court in Florida must first "determine whether the Florida long-arm statute provides a basis for personal jurisdiction.  If so, then [it] must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment.'"  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996) (citing Robinson v. Giarmarco & Bill, P.C., 74 F3d 253, 256 (11th 1996)); SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997).

Florida's long-arm statute authorizes courts to exercise specific jurisdiction pursuant to Fla. Sta. § 48.193(1) and general jurisdiction pursuant to Fla. Sta. § 48.193(2).  Madara v. Hall, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990).  A court may exercise specific

jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state.  Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006) (citing Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000)).  Specific jurisdiction requires some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state."[5] Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F.Supp.2d 1246, 1269 (S.D.Fla. 2001) (quoting Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman, 635 So.2d 79, 81 (Fla. 1st DCA 1994) (internal quotation marks omitted)).

A court may exercise general jurisdiction pursuant to § 48.193(2) when the suit does not arise out of the nonresident's contacts with Florida provided the nonresident is engaged in substantial and not isolated activity in the state.[6]  Stubbs, 447 F.3d at 1360 n. 3 (citing Meier, 288 F.3d at 1269); see Fla. Sta. § 48.193(2).  Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact."  Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258, 1262 (S.D.Fla. 2003) (citing Woods v. Nova Cos. Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999)).  These contacts must show a "general course of business activity in the State for pecuniary benefit."  Stubbs, 447 F.3d at 1361 (citations and internal quotation marks omitted). Although this is similar to the contact requirement for carrying on a business or business venture under §48.193(1)(a), for general jurisdiction to attach a defendant's business contacts with the forum "must be especially pervasive and substantial . . . ."  General Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335, 1343 (S.D.Fla. 2002).

Once the court has determined that jurisdiction over a nonresident defendants exists under the long-arm statute, it has to then decide whether it can exercise that jurisdiction

---

[5] This requirement is often referred to as "connexity."  Sun Trust Bank v. Sun Int'l Hotels, Ltd., 184 F.Supp.2d 1246, 1270 (S.D.Fla. 2001) (citing Bloom v. A.H. Pond Co., Inc., 519 F.Supp. 1162, 1168 (S.D.Fla.1981)).

[6] Section 48.193(2) provides that a nonresident who has "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

under the Constitution. This inquiry, which is primarily concerned with matters of due process, asks first whether the defendant has sufficient minimum contacts with the state such that he should reasonably anticipate being sued there, Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998), and second, whether it is fair to require the defendant to defend the suit in the forum state. See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1221 (11th Cir. 1999) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state."[7] Achievers Unlimited, Inc., 710 So. 2d at 719. Finally, "[o]nce it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum . . . these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Madara, 916 F.2d at 1517 (citing Burger King v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

**Discussion**

**A. Long-Arm Jurisdiction**

   *1. Specific Jurisdiction under Florida Statutes Section 48.193(1)(a)*

         *- Conducting a Business*

Where a defendant's business activities are concerned, specific jurisdiction will attach provided the defendant is carrying on a business or business venture in Florida either itself or through an agent. See § 48.193(1)(a).[8] In such instances the defendant's activities "considered collectively . . . [must] show a general course of business activity in

---

[7] The "continuous and systematic" contacts requirement for general jurisdiction is so demanding that if the defendant's activities meet the statutory requirements of § 48.193(2), the minimum contacts due process standard is also satisfied. Woods, 739 So.2d at 620. Accordingly, a court need not conduct a separate minimum contacts analysis for purposes of general jurisdiction.

[8] Section 48.193(1)(a) provides that jurisdiction over a nonresident exists if the nonresident is "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state . . . ." Fla. Stat. § 48.193(1)(a).

the state for pecuniary benefit." Sculptchair, 94 F.3d at 627 (quoting Dinsmore v. Martin Blumenthal Assocs. Inc., 314 So.2d 561, 564 (Fla. 1975) (internal quotation marks omitted)). A "business venture" generally concerns one subject matter or undertaking while "business" generally is "broader in scope denoting a variety of subjects, transactions or undertakings." Suffolk Fed. Credit Union v. Cont'l Ins. Co., 664 So.2d 1153, 1154 (Fla. 3d DCA 1995) (quoting Matthews v. Matthews, 122 So.2d 571, 573 (Fla. 2d DCA 1960) (internal quotation marks omitted)). Thus, "a single project or transaction" may be sufficient to constitute a "business venture" and satisfy the requirements of the long-arm statute. Atlantis Marina & Yacht Club, Inc. v. R&R Holdings, Inc., 766 So.2d 1163, 1165 (Fla. 3d DCA 2000) (citing Suffolk, 664 So.2d at 1154).

In Design-Build's Amended Complaint and Jenkins' Crossclaim, the parties allege that "Continental does business throughout the United States, including in the state of Florida." See docs. 51 ¶ 3 and 52 ¶ 3. In addition, Design-Build alleges that while Continental is not registered to do business in Florida, it continues to sell its products in the state. See doc. 51 ¶ 3. Further, Jenkins alleges that "Continental conducted business in the state of Florida by contracting to manufacture, supply, and deliver cast stone pieces to the Design-Build construction project" and that "Continental conducts and continues to conduct business in the state of Florida." See doc. 52 ¶¶ 8, 10. In response, Continental submitted the affidavit of James Mulaney, its Chief Financial Officer, in which he states that Continental does not own or lease any property in Florida, nor does it have employees or agents residing in Florida, nor does it have or operate an office in Florida. Mulaney further states that Continental did not solicit the work at issue in this case. Mulaney, however, does not contest Design-Build and Jenkins' allegations that Continental conducts business in Florida or that it continues to sell its products in the state.[9]

Based on the totality of evidence in the record, the court concludes that Continental's involvement with the Crestview project constituted conducting a business venture in the state of Florida for pecuniary benefit under § 48.193(1)(a). Continental

---

[9] Because Mulaney failed to respond to these allegations, the court accepts them as true. See Madara, 916 F.2d at 1514 (citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)).

entered into a contract for the manufacture of cast stone pieces, knowing that these pieces were intended for use in a construction project in Florida.  The contract required Continental to deliver the cast stone pieces to Florida.  The contract also provided that Continental would be paid $227,500 for its work.  During the course of its contract, Continental sent shop drawings of the proposed cast stone pieces to Design-Build at the Crestview site in Florida.  See, e.g., Empire Indus., Inc. v. Kaplan, 695 So.2d 919, 920-21 (Fla. 4th DCA 1997) (finding specific jurisdiction under § 48.193(1)(a) was appropriate in part because defendant sent artwork of the proposed product to plaintiff in Florida for approval).  Moreover, these shop drawings, as well as other product submissions prepared by Continental, identified a specific manufacture and delivery sequence including at least five separate phases of cast stone pieces for purposes of manufacture, delivery, and installation.  Continental then proceeded to make in excess of forty deliveries of cast stone pieces to the Crestview site from October 2004 through November 2005.  See, e.g., Control Laser Corp. v. Rocky Mountain Instrument Co., 130 F.Supp.2d 1344, 1346 (M.D.Fla. 2000) (finding specific jurisdiction under § 48.193(1)(a) was appropriate in part because defendant contracted to deliver a finished product to a Florida resident in Florida); Pollution Prevention Servs., Inc. v. Inter Recycling, Inc., 1996 WL 378990 *3 (M.D.Fla. July 1, 1996) (same). Each delivery included a shipping memo prepared by Continental setting forth which cast stone pieces were being delivered and identifying the destination of the shipment as Crestview, Florida.  The shipping memos further stated that invoices for the delivered cast stone pieces were to be sent to Jenkins' office in Pensacola, Florida.

When problems arose with the timeliness and quality of Continental's cast stone pieces, Continental became even more involved in the Crestview project.  Stephen Gray Allison, Design-Build's project manager for the project, stated that during the time the cast stone pieces were being delivered and installed he had almost daily conversations about these problems from his location at the Crestview project with Continental representatives in either Continental's corporate office in Kansas or its manufacturing facility in Savannah, Georgia.  See, e.g., Clover Sys., Inc. v. Almagran, S.A., 2007 WL 1655377 *4 (S.D.Fla. June 7, 2007) (finding specific jurisdiction under § 48.193(1)(a) was appropriate in part

because defendant exchanged numerous communications with the Florida plaintiff); Citicorp, 635 So.2d at 81 (same).  Continental responded to Design-Build's concerns by sending various representatives to the Crestview site, including Continental's General Manager for the Savannah fabrication facility on three or four occasions, Continental's Savannah factory production manager at least once, and Continental's Regional Vice President on approximately three occasions.  See, e.g., Clover Sys., 2007 WL 1655377 at *4 (finding specific jurisdiction under § 48.193(1)(a) was appropriate in part because defendant made regular trips to Florida to negotiate and facilitate the business relationship with the plaintiff); Empire, 695 So.2d. at 920-21 (same).  Continental also sent one of its employees, a "patch and finish" technician, to the site on multiple occasions to repair and perform remedial work.  Finally, after substantially all of the cast stone pieces had been delivered, Continental sent an entire crew to the Crestview site to perform further remedial and patch work.  This crew remained on site for three to four weeks.  These facts establish personal jurisdiction under § 48.193(1)(a).[10]

   2.   *Specific Jurisdiction under Florida Statutes Section 48.193(1)(g)*

       *- Breaching a Contract*

   Florida Statutes Section 48.193(1)(g) allows courts to exercise personal jurisdiction over a defendant who breaches a contract in Florida by failing to "perform acts required by the contract to be performed in Florida."  Sculptchair, 94 F.3d at 629.  Continental's contract with Jenkins required it to deliver to Florida cast stone pieces that conformed to the specifications, standards, and scheduling requirements stated in Jenkins' contract with Design-Build.  Thus, accepting Continental's allegations as true, by failing to deliver non-defective goods to the Crestview, Florida site, Continental breached the contract.  See, e.g., Advanced Bodycare Solutions LLC v. Thione Int'l, Inc., 514 F.Supp.2d 1326, 1330 (S.D.Fla. 2007) (finding specific jurisdiction under § 48.193(1)(g) was appropriate where delivery of the subject product was to be in Florida, in conformity with certain specifications

---

[10]  The "connexity" requirement for exercising specific jurisdiction is satisfied because each cause of action in this case "arises from" Continental's alleged failure to deliver the cast stone pieces, which were the subject of this business venture, in a timely manner and free of defects.  See Sun Trust Bank, 184 F.Supp.2d at 1269 (quoting Citicorp, 635 So.2d at 81 (internal quotation marks omitted)).

and without defect, and defendant allegedly failed to deliver conforming, non-defective products); Control Laser, 130 F.Supp.2d at 1346; Pollution Prevention, 1996 WL 378990 at *3.  Accordingly, personal jurisdiction over Continental also exists under § 48.193(1)(g).[11]

**B.  Due Process**

The court must next determine whether there are sufficient "minimum contacts" between Continental and Florida to ensure that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  Int'l Shoe, 326 U.S. at 316.

*1.  Minimum Contacts*

In a case involving specific jurisdiction, the court must apply a three-part test to determine whether the minimum contacts requirement is met.  Baker Electronics, Inc. v. Pentar Sys., Inc., 219 F.Supp.2d 1260, 1264 (M.D.Fla. 2002) (citing Response Reward Sys., L.C. v. Meijer, Inc., 189 F.Supp.2d 1332, 1338 (M.D. Fla. 2002)).  First, to satisfy the minimum contacts requirement the defendant's contacts with the forum must be related to the plaintiff's cause of action.  Id.  Second, these contacts "must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the state."  Id.  Third, "the defendant's contacts with the state must be such that the defendant would reasonably anticipate being haled into court [in Florida]."  Id.

In support of its motions to dismiss, Continental argues that it does not have any significant contacts with the state of Florida, see supra p. 6, and that it has not purposefully directed its activities at Florida given that all of the subject cast stone pieces were manufactured in Georgia.  While it is true that to satisfy the minimum contacts requirement there must be more than a general awareness on the defendant's part that its products would eventually enter the forum state through the stream of commerce (Asahi Metal Indus., Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)), in this case, Continental did considerably more than merely place its cast stone pieces into the stream of commerce.  Continental manufactured the

---

[11] The "connexity" requirement for exercising specific jurisdiction is satisfied because each cause of action in this case "arises from" Continental's alleged failure to deliver conforming, non-defective cast stone pieces in Florida.  See Sun Trust Bank, 184 F.Supp.2d at 1269 (quoting Citicorp, 635 So.2d at 81 (internal quotation marks omitted)).

subject cast stone pieces in conformity with the specifications required for use in the Crestview project and with the understanding that the cast stone pieces would be used in that project.  It then delivered the cast stone pieces to the Crestview site, as required by its contract with Jenkins, in over forty extended  shipments and sent invoices to Jenkins in Florida.  Continental's cast stone pieces therefore cannot be said to have arrived in and been used in Florida under "fortuitous" circumstances. Scultpchair, 94 F.3d at 631 (citing Burger King, 471 U.S. at 480).  Rather, the facts the court cited in support of its finding that Continental was engaged in a business venture in Florida also show that Continental had sufficient contacts with Florida such that it purposely availed itself of the privilege of conducting activities within Florida and should have reasonably anticipated being haled into court in this state.[12]

Continental also points out that its contract with Jenkins, the only contract to which Continental is a party in this case, contains a forum selection clause stating that "[j]urisdiction and venue for any action involving this agreement shall be in the State Courts of Johnson County, [Kansas]."  Continental argues that based on this forum selection clause it did not purposefully avail itself of the privilege of doing business in Florida nor was it reasonably foreseeable that it would be haled into court in Florida in relation to this project.  Continental's dealings, however, were not solely with Jenkins.  Design-Build alleges that Continental made a number of express warranties directly to Design-Build, sent shop drawings directly to Design-Build, delivered the cast stone pieces directly to

---

[12] See, e.g., Advanced, 514 F.Supp.2d at 1331 (finding minimum contacts requirement was satisfied in part because the defendant intended to and did deliver its product to Florida and then replaced a portion of that product which was defective); Baker Electronics, 219 F.Supp.2d at 1264 (finding minimum contacts requirement was satisfied in part because the defendant traveled to Florida to further the business venture, delivered three products to Florida, and transmitted information to the plaintiff in Florida); Control Laser, 130 F.Supp.2d at 1347 (finding minimum contacts requirement was satisfied in part because the defendant manufactured goods specifically for a Florida plaintiff and then delivered those goods to Florida); Pollution Prevention, 1996 WL 378990 at *4-5 (finding minimum contacts requirement was satisfied in part because the defendant delivered a recycling machine to Florida and then sent its employees to install the machine and subsequently repair the machine); Empire Indus., 695 So.2d at 920-21 (finding minimum contacts requirement was satisfied in part because the defendant traveled to Florida to negotiate the contract and sent artwork of the product to Florida for approval); Pace Carpet Mills, Inc. v. Life Carpet & Tile Co., Inc., 365 So.2d 445, 446 (Fla. 4th DCA 1978) (finding minimum contacts requirement was satisfied in part because the defendant, through a local distributor, agreed to sell and subsequently delivered its product to a Florida corporation).

Design-Build, and interacted directly with Design-Build personnel in patching and repairing the allegedly defective cast stone pieces.  Based on these interactions, Continental purposefully availed itself of the privilege of doing business in Florida and it could reasonably foresee being haled into court in Florida by Design-Build.[13]

  *2. Fair Play and Substantial Justice*

  In determining whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, courts should consider such matters as the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.  See Meier, 288 F.3d at 1276.

  Applying these factors, the court finds that its exercise of personal jurisdiction over Continental does not violate traditional notions of fair play and substantial justice.  As a threshold matter, the court does not believe this presents a burden on Continental. Continental found it convenient to send representatives to Florida to administer this contract.  See, e.g., Clover Sys., 2007 WL 1655377 at *4.  Further, to the extent there is a burden, "modern methods of transportation and communication have significantly alleviated" the burden of defending oneself in a foreign legal system.  Stubbs, 447 F.3d at 1364 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).  Finally, "[w]hen minimum contacts have been established," as they have been in this case, "often the interests of the plaintiff and the forum . . . will justify even the serious burdens placed on the alien defendant."  Asahi, 480 U.S. at 113.  In addition, Florida has a strong interest in adjudicating a dispute concerning a bank in Florida which would provide financial services to Florida residents.  Finally, it would be inefficient to dismiss the case at this time and have it brought in another court because significant discovery has already

---

[13]  The court notes that the terms of a forum selection clause alone are not dispositive of the question of whether personal jurisdiction exists.  See, e.g., Four Star Resorts Bahamas, Ltd. v. Allegro Resorts Mgmt. Servs., Ltd., 811 So.2d 809, 810-11 (Fla. 3d DCA 2002) (citing McRae v. J.D./M.D., Inc., 511 So.2d 540 (Fla. 1987)).

occurred under the supervision of this court, both Continental and Jenkins have filed motions for summary judgment that are currently under review by this court (docs. 95, 129, 130), and a jury trial is scheduled in this court for September 15, 2008.

Accordingly, it is hereby ordered that Defendant/Crossclaim Defendant Continental's Motions to Dismiss for Lack of Personal Jurisdiction (docs. 54 and 57) are DENIED.

**ORDERED** on this 10th day of March, 2008.


*s/ M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**